Henry, Bruce R., J.,
This matter is before the Court on the plaintiffs’ application to confirm an arbitration award and to assess post-award interest. After a review of the materials filed by the parties and a hearing, I make these findings and orders.

FACTS

The following facts are not in dispute:
1. The parties agreed to submit this medical malpractice action to binding arbitration.
2. That arbitration took place on March 1, 2, 7, 8, 9 and 10, 2005, before the Honorable John M. Xifaras, a retired Superior Court Justice.
3. In an award dated March 28,2005, the arbitrator found in favor of Bruce Hunter, M.D. on all claims brought by the plaintiffs and found for the plaintiffs against the other defendants, Rowland Meyer, M.D. and Alan Kent, M.D.
4. The arbitrator awarded damages as follows: for Robert Babbit Gagnon (Bobby) in the amount of $3,400,000; for Judith Babbit in the amount of $350,000; and for Robert Gagnon in the amount of $175,000. The arbitrator noted that the parties had reached an agreement relating to prejudgment/award interest and that his award did not include any interest.
5. The award is dated March 28, 2005, and was faxed to counsel for the parties on March 31, 2005.
6. By letter dated March 25, 2005, counsel for the defendants confirmed in writing an agreement among the parties. In pertinent part the letter stated: “In consideration of Plaintiffs’ waiver of their right to jury trial and appellate rights, their agreement to submit their claims to binding arbitration and for other good and valuable consideration, we have agreed that if the arbitrator awards damages to any of the plaintiffs in this matter, the total amount of such award will be supplemented by an additional fifty (50%) percent.” The letter memorializing the agreement among the parties makes no mention of post-award interest on any such supplemental payment.
*373 7. On April 5, 2005, Susan Reichenberg, a claim representative for Risk Management Foundation contacted plaintiffs’ counsel, Ralph Sbrogna, Esquire, to discuss payment of the award.
8. In that conversation, Ms. Reichenberg offered the assistance of Brian Milosh, a structured settlement specialist, should the plaintiffs wish to structure all or a portion of the award. Attorney Sbrogna agreed to discuss that possibility with his clients and with Mr. Milosh.
9. On April 6, 2005, Mr. Sbrogna telephoned Mr. Milosh and discussed potential structures and asked for proposals for three different amounts. He also indicated that he would send Mr. Milosh some medical records so that he could provide some life quotes. Mr. Milosh provided the requested structures that same day.
10. On April 7, 2005, Attorney Sbrogna called and advised Mr. Milosh that he would get back to him regarding a possible structured settlement.
11. Over the period from April 6 - 15, 2005, Ms. Reichenberg spoke with Mr. Milosh on an almost daily basis to check on the status of his discussions with Mr. Sbrogna and was advised that they were still working together and that the award check should not yet be cut.
12. On April 13, 2005, Mr. Milosh spoke with Mr. Sbrogna, who advised him that his clients were coming in the next day to discuss the issues and that he would call after that meeting.
13. Oh April 14, 2005, Mr. Sbrogna indicated to Mr. Milosh that the plaintiffs had a family member who was in the financial business and that they were considering using that person for their financial needs. Mr. Sbrogna indicated to Mr. Milosh that he was recommending to the plaintiffs that they agree to a structured settlement and advised him that he was still attempting to set up a meeting between Mr. Milosh and the plaintiffs for April 18, 2005.
14. On April 15, 2005, Mr. Sbrogna advised Ms. Reichenberg that the family had decided that they wanted the entire award in one check and did not intend to structure any of it. She advised Mr. Sbrogna that she could not send him the money via electronic means, but would send the check on the next business day. During that conversation, Mr. Sbrogna indicated that he wanted post-award interest on the award. Prior to that conversation, the parties had not discussed the issue of post-award interest.
15. On April 19, 2005, the plaintiffs filed the motion seeking confirmation of the arbitration award and the assessment of interest.
16. The award plus the 50% supplement were received by counsel for the plaintiffs on April 22, 2005.

APPLICABLE LAW

The purpose of an action to confirm an arbitration award is to enable a plaintiff to collect an unsatisfied award by enforcing the judgment that has been entered. Murphy v. National Union Fire Ins. Co., 438 Mass. 529, 532 (2003). Once full payment has been made, confirmation of the award becomes moot. Id. at 533.1 find that the plaintiffs are not entitled to confirmation of the award since the award has been paid.
“To encourage ‘swift obedience’ to the award without the necessity of court proceedings, the rule in Massachusetts is that post-award interest runs from the date of the award.” Sansone v. Metropolitan Property & Liability Ins. Co., 30 Mass.App.Ct. 660, 663 (1991); Murphy, supra, at 534.

DISCUSSION

The purpose of the general rule in Massachusetts regarding interest on an arbitration award is to encourage swift obedience to an award without the necessity of court proceedings. It appears that the rule, where an award of money has been made, is designed to prod the responsible party to pay the award swiftly or be subject to payment of interest on the award.
In this case, there are periods of delay which are attributable to the defendants’ insurer and periods of delay which are attributable to the plaintiffs themselves. Certainly, any period of time in which an award is not paid due to delay or inaction by the party responsible for paying the award should be subject to an assessment of interest. However, it is unfair to force a party to pay interest on an award if the delay in payment is attributable to the payee. In this case, from April 5 through April 15, 2005, the plaintiffs were considering possible structures into which some or all of the money awarded might be paid. During that period of time, although ready to pay the award, the defendants’ insurer did not know to whom or how much of the award should be paid. Therefore, no interest should be charged against the defendants or their insurer for that ten-day period.
Although the award is dated March 28, 2005, there is no dispute that the parties were not notified until March 31, 2005, by way of a fax to all concerned. Until notified of the award by the arbitrator, there could be no payment made by the defendants or their insurer.
Therefore, the defendants will be responsible to pay interest from March 31, 2005 until April 5, 2005 and from April 15, 2005 through April 22, 2005, when the payment was received.
That interest will run on the award of $3,925,000. The 50% supplement was the result of an agreement by letter among the parties and was not part of the arbitrator’s award. The agreement did not call for the payment of any interest on the 50% supplement to the award.

*374
ORDER

For the foregoing reasons, judgment shall enter that the plaintiffs are entitled to receive interest at the statutory rate on the arbitrator’s awards of $3,925,000.00 for the periods of March 31 - April 5, 2005 and April 15 - April 22, 2005.